1  **CAROL A. SOBEL**  SBN 84483
2  **MONIQUE ALARCON** SBN 31165
3  **WESTON ROWLAND**  SBN 327599
   **LAW OFFICE OF CAROL SOBEL**
4  725 Arizona Avenue, Suite 300
   Santa Monica, California 90401
5  t. 310-393-3055
6  e. carolsobellaw@gmail.com
7  e. monique.alarcon8@gmail.com
   e. rowlandweston@gmail.com
8

9
10 Attorneys for Plaintiffs

11             UNITED STATES DISTRICT COURT
12   FOR THE CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

13

| | |
|---|---|
| Larry Dunn, an individual; CANGRESS, a non-profit DBA Los Angeles Community Action Network, | Case No.:2:20-cv-420 |
| | Civil Rights Complaint |
| Plaintiffs | |
| v. | 42 U.S.C. § 1983:14th Amendment; California Constitution Art. I, § 7; 42 U.S.C. § 12101 et seq.: Title II of the Americans with Disabilities Act; Cal. Civ. Code §§ 54, et seq. |
| City of Los Angeles, | |
| Defendant. | |

## JURISDICTION AND VENUE

1. This is an action for injunctive and declaratory relief pursuant to 42 U.S.C. §1983 for violations of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §12101 et seq., the Americans with Disabilities Act ("ADA") and the analogous provisions of California constitutional and statutory law.  Plaintiffs also seek damages for the individual plaintiff.  Jurisdiction exists pursuant to 28 U.S.C. §§1331 and 1343 based on 42 U.S.C. §1983 and questions of federal law.  Jurisdiction also exists under the Declaratory Judgement Act, 28 U.S.C. §§2201(a) and 2202.  The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367(a).

2. Venue is proper in the Western Division of the Central District in that the events and conduct complained of herein all occurred in Los Angeles County.

## PRELIMINARY STATEMENT

3. In 2013, the City of Los Angeles created an Administrative Citation Enforcement ("ACE") program as an alternative to court prosecutions for minor offenses.  The two initial departments approved to participate in the pilot program were the Los Angeles Police Department ("LAPD") and Animal Services.  Since then, the City Council repeatedly voted to expand the ACE program to apply to additional City departments and more offenses.  The ACE program currently includes some "quality of life" citations issued in significant numbers to persons who are homeless or formerly homeless and now living in subsidized housing.

4. In the years since the pilot program began, reports from the City Attorney about the program found that the LAPD issued more than two-thirds of the total annual ACE citations.  By far, the most cited offenses are drinking in public and possession of an open container in public.  In the 2018 status report issued by the City Attorney, approximately 47% of all ACE citations were for drinking in public or possession of an open container.  In the report issued in June 2017, drinking in public accounted for 38 percent of all ACE citation issued.

5. The ACE program is outsourced by the City to a for-profit company tasked with providing notice of the administrative citation, the computer payment system, the procedures for requesting hearings, and any other operational issues.

6. Several years after the program began, the City Council was made aware of major deficiencies in the program. Specifically, among the problems identified, the ACE program failed to provide constitutionally sufficient due process, including in the hearing process; failed to provide adequate procedures for seeking a waiver or other relief from the program's base $300 fine and additional penalties and costs, amounts far higher than court fees for the same offense; failed to accommodate individuals with disabilities, or who lacked access to a computer and a credit card; and, failed to provide a readily available and navigable process. Those same structural problems are at the root of this action.

7. The City was made aware of most of these problems by complaints from organizations assisting low-income individuals navigate the ACE program after they were issued citations for alleged violations of various laws. The City Council passed a motion sponsored by Councilmembers Price, Huizar and Ryu, directing the City Attorney to review the ordinance and draft amendments.

8. Specifically, the Council's motion stated that:

    a. "Failure to pay an ACE fine on time, for example, should not result in a misdemeanor offense. It negates the very reason for the creation of the program. Furthermore, allowing an individual only twenty days to pay the fine or request an administrative hearing, is not sufficient time.

    b. The administrative hearing process itself is also problematic. Requesting of an administrative hearing requires an individual to pay upfront costs and if the citation is upheld, pay additional administrative costs. These hurdles lead to many individuals not using the administrative hearing

     process, especially when they face financial constraints. The City should consider setting fines based upon an individual's ability to pay and allow for community service as an alternative to payment.

  c. The City should also ensure … language accessibility for citations, websites, and forms for the ACE program, as well as interpreters available for administrative hearings.

  d. A comprehensive review of the ACE program should be conducted to review these issues and seek recommendations for improvements, so that the program can run as smoothly and effectively as possible, and be able to better serve the individuals it was created to help."

9. The motion directed the Chief Legislative Analyst, working with the City Attorney, to report back on how "to improve the ACE program including removing the criminal prosecution for failure to pay, extending the timeline to pay or request a hearing, reforming the administrative hearing process, allowing individuals to pay a lower fee or participate in community service, and ensuring … language accessibility … ." *See* City Council File No. 14-0818-54, https://cityclerk.lacity.org/lacityclerkconnect/index.cfm?fa=ccfi.viewrecord&cfnumber=14-0818-S4.

10. The motion passed the Council on December 14, 2016. On January 3, 2019, it expired pursuant to Council policy, without any action to amend the ACE program. Consequently, the problems identified in 2014 continue.

11. The current administrative process for ACE citations denies Plaintiffs a fair hearing because there is no ability to bring evidence and to respond to evidence before impartial adjudicators. "In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." *Ching v. Mayorkas*, 725 F.3d 1149, 1156

(9th Cir. 2013).   The ACE program regulations do not meet the requirements for a fair hearing: plaintiffs bear the burden of proof, citations are prima facie evidence of guilt, officers are not required to appear so there is no opportunity for cross-examination and hearing examiners are not impartial.

12. Second, the ACE program is not accessible to individuals with disabilities and provides no options or opportunities for accommodations.  Title II of the Americans with Disabilities Act and analogous California statutes mandate that no qualified individual, by reason of such disability, be excluded from the services, programs, or activities of a public entity.  For individuals who are disabled, homeless, and indigent, the program is unnavigable at every step, setting up unwarranted and unlawful barriers to compliance with disability laws.

## PARTIES

13. **LARRY DUNN** is a resident of the City of Los Angeles.  He is 66 years old and severely disabled with a significant mobility impairment and a diagnosed psychological disability.  His only source of income is SSI disability payments.  On or about September 3, 2019, Mr. Dunn was issued a citation by a Los Angeles Police Department officer for a violation of LAMC § 41.27 ("Intoxication"), for possessing an open container in public.  Despite its suggestive title, the ordinance covers a range of offenses, including simple possession of an open container in public.  The face of the citation indicated it was issued pursuant to the City's Administrative Citation Program.  The document he received directed Plaintiff **DUNN** to a website, however he does not own or use a computer and often does not have a cellphone.  He does not have a credit card or a checking account.  Unfamiliar with the ACE program and unable to navigate the computer site identified on the citation, Mr. **DUNN** sought assistance from the pro bono clinic coordinated on Skid Row with and at Plaintiff **CANGRESS.**

14. Plaintiff **CANGRESS**, also known as the Los Angeles Community Action Network ("LA CAN"), is a grassroots, non-profit organization working in

Skid Row for two decades. More than 800 low-income residents of Skid Row are involved with LA CAN, many of whom are unsheltered each night. The primary purpose of the organization is to organize and empower community residents to work collectively to address systemic poverty and oppression in the community. Since its founding in 1999, LA CAN has been the only member-driven organization in Skid Row whose goal is to protect the rights and prevent the further disenfranchisement of homeless and poor people in Los Angeles.

15. One program of LA CAN provides pro bono legal representation to low-income residents of Skid Row, both housed and unhoused, who are subject to prosecution for "quality-of-life" crimes. The clinic has operated out of LA CAN for well more than 10 years. Many of the individuals served by the clinic are members of LA CAN. Plaintiff **CANGRESS** brings this action on behalf of its members and associates who, like Mr. **DUNN**, have been or will be subject to enforcement policies, practices and customs of the ACE program in and around Skid Row. As a result of Defendants' unlawful actions, LA CAN has expended resources to address these citations so that they can assist their members and associates to stay out of the criminal justice system and avoid collections.

16. Defendant **CITY OF LOS ANGELES ("CITY")**, is a municipal entity organized under the laws of the State of California. The ACE program challenged herein is an official policy of the Defendant **CITY**, codified at Los Angeles Municipal Code §11.02 *et seq*. The ACE program is approved by the Los Angeles City Council and administered and enforced by the Los Angeles City Attorney, acting through its employees and agents, including but not limited to, the Los Angeles Police Department and the private contractor Data Ticket.

17. The Defendant, its employees and agents, participated in the unlawful conduct challenged herein and, to the extent that they did not personally participate, the City authorized, acquiesced, set in motion, or otherwise failed to

take necessary steps to prevent the acts that resulted in the unlawful conduct and the harm suffered by Plaintiffs.  Each acted in concert and under color of state law.

**FACTS**

18.   In or around 1993, the California Legislature passed AB 408, addressing reforms to parking ticket laws.  The measure decriminalized parking citations, making them civil offenses.  It authorized local public entities to contract with private entities to provide "administrative hearings" for parking violations.

19.   In 2010, the Los Angeles City Council introduced an ordinance authorizing creation of the Administrative Citation Enforcement (ACE) Pilot Program and adding Article 11 to Chapter 6, Division 5 of the Los Angeles Administrative Code to establish the ACE program and a special fund titled the Code Compliance Fund.  Los Angeles City Council File No. 10-0085.  Over the next three years, the City revised the Ordinance repeatedly, expanding the City agencies and code violations included in the administrative process.

20.   Though well-intentioned, as it is presently codified, the ACE program does not comport with Due Process requirements and does not include adequate provisions for accommodating individuals with disabilities or financial hardship.  For Plaintiff **DUNN** and similarly situated individuals, the system is impenetrable.

21.   The ACE program is outsourced by the **CITY** to a private company, Data Ticket, Inc.  Data Ticket operates under a variety of DBAs, subsidiary and parent companies, all engaged in citation enforcement and related collections operations.  One such DBA is the Citation Processing Center ("CPC"), the website to which ACE citation recipients are directed.  Other DBAs include the Ticket Wizard, and the Municipal Services Bureau, a collection agency.

22.   Pursuant to LAMC §11.2.03, the recipient of the citation has only 20 calendar days in which to respond.  This language is expressly included in the Municipal Code, but not on the initial citation from an LAPD officer.   Instead, the citation informs the recipient that further notice will be sent within 14 days by the

Administrative Citation Enforcement (ACE) Processing Center.  The initial document given to Mr. **DUNN** also stated that the mailed Notice will tell him how much the fine is and how to pay or contest it.  On information and belief, recipients often do not receive further notice within the 14-day period, if at all.  Plaintiff **DUNN** did not.

23. A recipient has only 20 days to contest the ticket and attend an administrative hearing.  LAMC §11.2.08 (a).  Assuming the mail notice is delivered in one day, there are no more than five days to respond to the citation – pay it or request a hearing.  However, there is a distinct time lapse between processing citations entered directly on a handheld device and those written in a citation book.  According to the "Frequently Asked Questions" section of the citationprocessingcenter.com website, a handwritten citation may take several weeks to be entered into the processing system and then mailed out.  Mr. **DUNN**'s citation is handwritten.

24. Once the initial 20-day deadline is missed, there is no further chance to challenge the legally sufficiency of the citation.  Even where, as here, the mailed Notice was never received, there is no exception to the 20-day cut-off.  Failure to pay the underlying citation and any additional fines results in a fee added to the overall fines and costs.  §11.2.11.  The City may use "any civil legal remedy" to collect the fine and may recover legal fees and attorney fees for a civil action.  LAMC §11.2.11(d).  Other penalties may be imposed, including misdemeanor penalties to unpaid fines. *See,* Council File No. 14-0818-S4 (Dec. 14, 2016), *available at* http://clkrep.lacity.org/onlinedocs/2014/14-0818-S4_mot_12-14-2016.pdf.

25. Payment of the citation is made by accessing the Citation Processing Center website or mailing a check. LAMC §11.2.07.  To obtain an administrative hearing, costs must be paid upfront and, if the citation is upheld, administrative costs must also be paid.

26. If a person requests a hearing, the City Attorney first conducts an initial review of the citation to determine its validity. *See* LAMC §11.2.08. If the citation is upheld in the initial review, the Recipient may then request a hearing seeking to dismiss the ticket. In the hearing process, "(f)ormal rules of evidence and discovery do not apply." LAMC §11.2.09(e)1. The City must prove the citation by only a preponderance of the evidence. There is no right to confront the citing officer. LAMC §11.2.09(e)3. "[T]he officer may attend the hearing but is not required to do so." LAMC §11.2.09(e)3.

27. LAMC §11.2.02 provides for appointment of an Administrative Hearing Officer. The only restriction is that the person may not be a City employee. No similar restriction exists on Data Ticket employees serving as hearing officers and, on information and belief, Plaintiffs allege that employees of Data Ticket, or one of its DBAs, routinely serve as administrative hearing officers in circumstances where there is a direct financial impact for the private contractor.

28. The likely outcome of an administrative hearing is escalating costs to the recipient. Costs of the hearing are passed along to the recipient of the ACE citation, including unspecified additional fines and penalties for enforcement and administrative costs. LAMC §11.2.09 (g) 2.

29. Neither the paper citation nor the Data Ticket website informs the alleged violator of an ability to pay hearing. There is no opportunity to lower the fine based on indigency or perform community service in lieu of paying a fine, as there is in Court with an infraction or misdemeanor. The **CITY**'s form for an "ADVANCE DEPOSIT HARDSHIP WAIVER" applies only to the requirement to pay the fine in advance in order to challenge the underlying citation.

30. The Los Angeles City Attorney issues an annual "Administrative Citation Enforcement (ACE) Program Status Report. The most recent report, dated October 12, 2018, covered July 2017 through June 2018. It was posted in December 2018 on the City Council's File Index as Report No. 18-0314. By far,

most ACE citations are issued by the Los Angeles Police Department. In the time period covered by this Report, the LAPD issued 9,190 citations. Of that total, 6,943 (76%) were processed in the ACE program. The remainder were referred to the Neighborhood Justice Program and the HEART Team. Nearly 50 percent of these were for drinking in public (26.25%), and possession of an open container (20.71%). *Id.* at 2. The City Attorney's Status Report does not explain why 24 percent of the citations were rejected outright.

31. In the 12 months covered by the City Attorney's 2019 report, Data Ticket collected $1,175,568.23. Unpaid fines for the same timer period totaled $1,952,753.17, with more than half of unpaid fines attributable to ACE citations issued by the LAPD. *Id.* at p. 4.

**ADA Facts**

32. The Data Ticket website is not accessible to, and does not accommodate, persons with disabilities. The **CITY**'s contract with Data Ticket delegates full authority to the company to decide requests for accommodations based on disability. The decision of Data Ticket is final. On information and belief, Data Ticket denies all requests for modifications submitted after the initial 20-day payment period is expired.

33. On October 16, 2019, when he did not receive a Notice of the ACE citation in the mail, Mr. **DUNN** sought assistance at the monthly pro bono clinic at LA CAN. He explained that he did not understand the administrative ticket and could not easily respond to it because he didn't use the internet. He further explained that his disability made communicating over the phone difficult and that uncertainty concerning the citation was causing him stress.

34. On the CPC website, **DUNN**'S citation entry states: **Sorry, the time allowed to request a Review for this citation expired at midnight on 10/09/2019.**

35. On or about October 17, 2019, on Plaintiff **DUNN**'s behalf, an attorney with the Clinic called the Citation Processing Center at the number listed

9

on the Administrative Citation issued by the LAPD officer to try to set a hearing date for Larry Dunn to contest his citation. When the attorney informed the Citation Processing Center employee that Mr. **DUNN** was severely disabled and low income and, on those bases, requested an accommodation, the agent denied the requests, leaving Mr. **DUNN** with the sole option to pay the $300 fine, plus any penalties. On December 3, 2019, after repeated unsuccessful attempts, the attorney for Plaintiff **DUNN** was able to speak to a supervisor at the Citation Processing center. Once again, the attorney explained Mr. **DUNN**'s request but, again, it was denied.

## MONELL ALLEGATIONS

35. Based upon the principles set forth in *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), the **CITY** is liable for all injuries sustained by Plaintiffs as set forth herein. The Defendant **CITY** bears liability because its policies, practices and/or customs caused Plaintiffs' injuries.

36. LAMC § 11.2 is the written policy of Defendant **CITY** that caused Plaintiffs' injury. This provision is patently violative of fundamental constitutional principles on its face because it fails to provide adequate Due Process. The **CITY** continues enforcement of the ACE program despite awareness of fundamental constitutional deficiencies in the ordinance and its implementing policies. *See,* Los Angeles Cty. Council File No. 14-0818-S4 (Dec. 14, 2016) *available at* http://clkrep.lacity.org/onlinedocs/2014/14-0818-S4_mot_12-14-2016.pdf.

37. The City is aware that LAMC 41.17 citations are among the most cited offenses in and around houseless communities. LA City Attorney, *Homeless Engagement and Response Team*, (last visited Dec. 11, 2019) *available at* https://www.lacityattorney.org/homelessness. Despite awareness that disabled persons would likely receive these citations, the **CITY** failed to enact policies to ensure that LAMC §11.2 provides access and accommodations to persons with disabilities affected by the ACE program.

# FIRST CAUSE OF ACTION

## Right to Due Process of Law; 42 U.S.C. § 1983

## Fourteenth Amendment; California Constitution Art. I, § 7; Art. I §14

38. Plaintiffs incorporate by reference the foregoing allegations as if set forth fully hereat.

39. The ACE program, as codified and implemented, violates the due process clauses of the Fourteenth Amendments to the U.S. Constitution and Article I, § 7 of the California Constitution in that it fails to provide plaintiffs with adequate notice, or allow for a fair hearing before impartial adjudicators, including the opportunity to confront and cross-examine adverse witnesses.

40. LAMC §11.2 fails to meet minimum due process requirements in that, among other deficiencies, it fails to give adequate notice of the citation and procedures for the ACE citation program; fails to give an opportunity to confront the accusing officer, fails to include an indigency waiver or a non-monetary means to comply with the fine, and shifts the burden of proof to the citation recipient.

41. The actions of Defendant **CITY** were and are in violation of 42 U.S.C. §1983 and the Fourteenth Amendment to the United States Constitution, as well as the analogous California Constitution provision. Plaintiffs are entitled to injunctive relief to remedy the constitutional deficiencies in LAMC §11.02 *et seq.* and related implementing rules and regulations.

42. The policies, procedures and actions of Defendant and its designated agents and employees, including but not limited to Data Ticket, caused and continue to cause pain and suffering to Plaintiff **DUNN**. As a proximate and direct result of the action of Defendant City's agents, Plaintiff **DUNN** is entitled to compensation for such injury.

## SECOND CAUSE OF ACTION

**Violation of 42 U.S.C. §12101 et seq.: Title II of the Americans with Disabilities Act; Cal. Civ. Code §§54, et seq. - the Disabled Persons Act**

43. Plaintiffs incorporate by reference the foregoing allegations as if set forth fully hereat.

44. The ACE program is a "public place" "program" or "service" within the meaning of 42 U.S.C. §12101 et seq. and California Civil Code §§54.1 - 54.3. Plaintiff **DUNN**, as a person with chronic disabilities, is a qualified individual within the statutory definition of 42 U.S.C. §12101 et seq. and Cal. Civ. Code §§54, et seq.

45. Mr. **DUNN** twice informed agents of the ACE program that he was unable to utilize the ACE program because of his disability. Each time he requested a reasonable accommodation; however, his requests were denied.

46. The actions of Defendant were and are in violation of 42 U.S.C. § 12101 et seq. and California Civil Code §§ 54, et seq. and therefore Plaintiffs are entitled to injunctive relief remedying the discrimination.

47. As a result of the acts of Defendant **CITY** and its agents, Mr. **DUNN** experienced pain and suffering and is entitled to compensation for such injury.

**WHEREFORE**, Plaintiffs pray as follows:

1. For a preliminary injunction, and permanent injunction, enjoining and restraining Defendant from issuing ACE citations without adequate notice, hearings, and adjudication procedures;
2. A declaration that the City's ACE program, as administered, fails to provide access or accommodations for persons with disabilities;
3. For a declaratory judgment that Defendant's policies, practices, and conduct as alleged herein violate Plaintiffs' rights to due process of law under the United States and California constitutions;

4. For damages to the individual Plaintiff according to proof;

5. For costs of suit and attorney fees as provided by law;

6. For such other relief as the Court deems just and proper.

Dated: January 15, 2020   LAW OFFICE OF CAROL A. SOBEL

      /s/     Carol A. Sobel
By: CAROL A. SOBEL
Attorneys for Plaintiff